### In re Allegations and Complaint Concerning the Honorable Robert F. JOHNSON.

### No. CX–83–909.

Supreme Court of Minnesota.

Sept. 28, 1984.

### ORDER

On June 24, 1983, a document entitled:

STIPULATION BETWEEN THE BOARD ON JUDICIAL STANDARDS OF THE STATE OF MINNESOTA AND THE HONORABLE ROBERT F. JOHNSON

AND

RECOMMENDATION OF THE BOARD ON JUDICIAL STANDARDS TO THE SUPREME COURT OF THE STATE OF MINNESOTA

was filed with this Court (see attached Exhibit 1). By letter dated September 20, 1983, the Board advised the Court:

> Pursuant to Rule 12(e) Rules of the Board on Judicial Standards, we hereby notify you of an additional proceeding before the Board involving Judge Robert F. Johnson. This information is submitted for your consideration as the Supreme Court may delay decision and hold the Stipulation matter pending the

Board's determination of this additional proceeding.

By letter dated March 9, 1984, the Board advised the Court that a complaint (see attached Exhibit 2) had been served on Judge Johnson and requested that the Court appoint a referee to conduct a formal hearing. On March 15, 1984, the Court appointed the Honorable James C. Otis, retired Supreme Court Justice, as such referee, and on July 13, 1984, after formal hearing, a document (see attached Exhibit 3) entitled "Findings and Recommendations of the Referee" was filed with the Board on Judicial Standards. By document filed August 2, 1984, the Board ·advised the Court:

> The Board on Judicial Standards at its regular meeting on July 20, 1984 voted unanimously to adopt the Findings and Recommendations of the Honorable James C. Otis, Referee appointed in the above entitled matter, * * *.

The stipulation between Judge Johnson and the Board provided sanctions of public censure and a fine of $1,000 for the conduct recited therein and agreed to constitute willful misconduct in office and conduct prejudicial to the administration of justice or unbecoming a judicial officer that brings the judicial office into disrepute.

The existence of the prior conduct of Judge Johnson which was included within the stipulation filed with, but not yet ruled upon by, the Supreme Court presented a problem to the referee in making a recommendation for discipline of Judge Johnson for the additional conduct found by the referee to be prejudicial to the administration of justice and that brought his judicial office into disrepute. The findings and recommendation of the referee state, in part:

> Finally, the introduction of a stipulation reached by the parties in prior disciplinary proceedings against Judge Johnson by file No. 82–62 presents the question of whether or not his prior behavior justifies recommending a sanction more severe or less severe than otherwise would be appropriate.

> The referee, being in doubt, has resolved the issue by treating the charges

here presented as an isolated matter and has proposed a sanction which is uninfluenced either by the gravity of the prior misconduct or by the sanctions to which the parties stipulated in the prior proceedings.

We note that the conduct upon which the stipulated sanction was based ceased prior to the time of the stipulation and that there has not been a reoccurrence of such conduct. We also note that the conduct found by the referee involved a single instance of inexcusable delay in the disposition of a case before Judge Johnson in his capacity as a judge and 36 probate matters undertaken by him as a practicing private attorney before he became a fulltime judge on January 1, 1975. As to the probate matters, the referee concluded:

1. All but one of the 36 estates have now been closed. Judge Johnson, at his own expense, has retained counsel to finish whatever remained to be done. To the extent they may be mitigating circumstances, it should be noted that apparently prompt distribution of assets was made by Judge Johnson to all heirs and other beneficiaries; all creditors, including taxing authorities were paid; necessary transfers of real estate were completed; and no complaint from any interested party has been made. The estates were small, ranging on the average between $12,000 and $13,000 as to the 15 whose assets were disclosed by the evidence. In addition, it is of some significance that Judge Johnson has incurred or paid other attorneys $6,250 to complete the proceedings of the 36 estates in question and has forfeited $2,980 over the 3 weeks when his salary was withheld. He has already suffered substantial penalties for his derelictions of duty.

The Board on Judicial Standards is charged by statute to make disciplinary recommendations to the Court and it has recommended that this Court accept the stipulation entered into between the Board and Judge Johnson and the sanctions provided therein. We do accept the stipulation. The Board also recommends that the Court accept the findings and recommendations of the referee. The Court has the authority to accept, reject or modify, in full or in part, the recommendations of the Board. See, Rules of Board on Judicial Standards 12(f); *In re Gillard*, 271 N.W.2d 785, 813 (Minn.1978). We also agree with, and concur in, the findings of the referee, as adopted by the Board. However, we do not believe that an additional censure for conduct substantially overlapping in time that on which a first censure is based adds anything of substance to the discipline.

IT IS THEREFORE ORDERED: (1) that Judge Robert F. Johnson be, and hereby is, censured for the conduct set forth in the attached stipulation and in the attached findings and recommendation of the referee; and (2) that Judge Robert F. Johnson pay to the Board on Judicial Standards of the State of Minnesota on or before November 1, 1984, a fine in the sum of $1,000.

TODD, J., took no part in the consideration or decision of this case.

EXHIBIT 1

CX–83–909

STATE OF MINNESOTA IN SUPREME COURT

In re Allegations Concerning the Honorable Robert F. Johnson

Board on Judicial Standards

File No. 82–62

STIPULATION BETWEEN THE BOARD ON JUDICIAL STANDARDS OF THE STATE OF MINNESOTA AND THE HONORABLE ROBERT F. JOHNSON

AND

RECOMMENDATION OF THE BOARD ON JUDICIAL STANDARDS TO THE SUPREME COURT OF THE STATE OF MINNESOTA

IT IS HEREBY STIPULATED AND AGREED by and between the Board on Judicial Standards (hereinafter designated petitioner) and Robert F. Johnson (hereinafter designated respondent) as follows:

1. Petitioner has filed a Statement of Allegations Against Judge Robert F. Johnson dated September 29, 1982.

2. Respondent has responded to that Statement both in an Oral Response on January 21, 1983, and in a Written Response dated February 25, 1983.

3. Petitioner has concluded that sufficient cause exists to file a Complaint and to proceed to a hearing. However, no Complaint has yet been filed, no testimony has yet been taken, no order has yet been entered, and no proceedings are now pending before any referee.

4. Respondent desires to enter a Stipulation with the petitioner to bring this matter to a conclusion at this point. For that purpose, respondent admits:

a. That in several instances respondent has failed to issue timely decisions in violation of Rules of Criminal Procedure, Rule 26.01, Subd. 2, and Minnesota Statute § 546.27.

b. That in several instances respondent has failed to certify to the Department of Public Safety the record of the Court on cases in which persons were convicted or forfeited bail for violating laws or city ordinances regulating the operation of vehicles on highways and in several other instances has decertified convictions of persons, all of which acts are in violation of Minnesota Statute § 169.95.

c. That in several instances respondent has failed to have the petitioner, prosecuting attorney, and defendant's attorney present at sentencing, in violation of the Rules of Criminal Procedure, Rule 27.03, Subds. 2 and 3, and the Code of Judicial Conduct, Canon 3(A)(4).

d. That in several instances respondent has failed to order alcohol problem assessments in alcohol-related cases, in violation of Minnesota Statute § 169.126.

e. That in several instances respondent has violated Minnesota Statute § 169.121 in handling alcohol-related cases.

f. This is willful misconduct in office within the meaning of Rule 4(a)(2) of the Rules of the Board on Judicial Standards and Minnesota Statute § 490.16, Subd. 3.

g. This is conduct prejudicial to the administration of justice or conduct unbecoming a judicial officer that brings the judicial office into disrepute within the meaning of Rule 4(a)(4) and Minnesota Statute § 490.16, Subd. 3.

5. On the basis of these admissions respondent agrees:

a. To accept public censure from the Supreme Court, which censure may set out the reasons for which it is given.

b. To pay a fine in the sum of $1,000.00

6. Respondent understands and agrees that the Statement of Allegations Against Judge Robert Johnson, respondent's Oral Response, respondent's Written Response, and this Stipulation shall be filed with the Supreme Court.

7. Petitioner hereby recommends to the Supreme Court that this proceeding be disposed of in accordance with this Stipulation.

IN WITNESS WHEREOF, the parties have hereunto set their hands this 20 day of June, 1983.

> THE BOARD ON JUDICIAL STANDARDS
> By /s/ Gene Halverson
> Gene Halverson, Chairman
> /s/ Robert F. Johnson
> The Honorable Robert F. Johnson, Respondent
> STOLPESTAGHD, BROWN & SMITH, P.A.
> /s/ Gary Hansen
> Gary Hansen
> Attorneys for Respondent

EXHIBIT 2

STATE OF MINNESOTA

BEFORE THE BOARD ON JUDICIAL STANDARDS

INQUIRY CONCERNING A JUDGE

NO. 83–59

Complaint concerning the Honorable Robert F. Johnson, Ramsey County Municipal Court, State of Minnesota

The Board on Judicial Standards (hereinafter called the "Board") makes this Com-

plaint to advise the respondent, the Honorable Robert F. Johnson, Ramsey County Municipal Court, State of Minnesota, of the institution of formal proceedings to inquire into the charges against him.

## I.

This Complaint is made, served, and filed pursuant to Minnesota Statutes 490.15 through 490.16 and the Rules of the Board on Judicial Standards.

## II.

Respondent is hereby advised of his duty to respond to the Complaint in writing within 20 days or make personal appearance in lieu of a written response, pursuant to Rule 8(a)(3) of the Rules of the Board on Judicial Standards. Said Answer is to be filed with the Board on Judicial Standards, 202 Minnesota State Bank Building, 200 South Robert Street, Saint Paul, Minnesota 55107.

## III.

Pursuant to said Rules, the Board has made inquiry and a preliminary investigation with respect to whether the respondent is guilty of conduct prejudicial to the administration of justice, which brings the judicial office into disrepute within the meaning of Minnesota Statutes 490.16, Subd. 3, and the Minnesota Constitution, Article VI, Section 9; and whether said conduct as has been alleged seriously diminishes public confidence in the integrity of the respondent in particular, and of the judiciary in general, in violation of Minnesota Statutes 546.27 and Canon 6 DR 6-101(A)(3) of the Code of Professional Responsibility.

## IV.

On or about October 26, 1983, the Board served written notice to the respondent concerning the nature of the charges against him and afforded him an opportunity for consideration by the Board, explaining, refuting, or admitting the alleged misconduct.

## V.

Respondent filed with the Board a response to the Statement of Allegations.

## VI.

Upon all files, records and proceedings before it, the Board has concluded that formal proceedings should be instituted, and the Board hereby advises respondent of the following charges against him.

## VII.

Respondent is charged with conduct prejudicial to the administration of justice which brings the judicial office into disrepute within the meaning of Minnesota Statutes 490.16, Subd. 3; the Minnesota Constitution, Article VI, Section 9, and in violation of Minnesota Statutes 546.27 and Canon 6 DR 6-101(A)(3) of the Code of Professional Responsibility.

The conduct upon which such charge is based is as follows:

A. That you, Honorable Robert F. Johnson, heard a matter in re: Midway National Bank of St. Paul vs The Continental Insurance Co., New York Corporation, Civil Register File No. 237876, on April 23, 1979, and did not issue an order until October 6, 1983, which was filed on October 7, 1983.

B. That you, Honorable Robert F. Johnson, during your practice of law, failed to diligently close thirty-six estates in which you were the attorney.

## VIII.

You are hereby advised that upon the filing of your answer, or your appearance pursuant to Rule 8(a)(3) of the Rules of the Minnesota Board on Judicial Standards, the Board will schedule a hearing before a fact finder pursuant to Rule 8(d) and Rule 9.

These formal proceedings may ultimately result in the Board's recommendation to the Supreme Court of the State of Minneso-

ta of discipline, removal, retirement or suspension of the respondent.

Dated: This 1st day of December, 1983.

THE BOARD ON JUDICIAL STANDARDS

By /s/ James J. Schumacher

JAMES J. SCHUMACHER, CHAIRMAN

EXHIBIT 3

State of Minnesota

Before the Board on Judicial Standards

Inquiry Concerning The Honorable Robert F. Johnson

# 83–59

*Findings and Recommendations of the Referee*

These proceedings have been brought by the Board on Judicial Standards to remove or retire from judicial office The Honorable Robert F. Johnson, a judge of the Ramsey County Municipal Court, for failure to perform with diligence his duties as a lawyer and as a judge.

There are two specific charges here for consideration: First, that on April 23, 1979, Judge Johnson conducted a hearing in the case of *Midway National Bank v. The Continental Insurance Co.,* but failed to render a decision until October 6, 1983; second, that Judge Johnson failed to close diligently 36 probate estates he undertook to handle while practicing law.

The facts are not in dispute. The issue is whether or not Judge Johnson's professional and judicial conduct have been prejudicial to the administration of justice and have brought his judicial office into disrepute and, if so, what sanctions are appropriate.

With respect to the *Midway Bank* case, clearly Judge Johnson was guilty of violating both Minn.Stat. § 546.27, which requires decisions to be filed within 90 days after submission, and Canon 3A(5) of the Code of Judicial Conduct, which mandates that "a judge should dispose promptly of the business of the court."

As to Judge Johnson's performance as a lawyer, the Board also has jurisdiction to recommend discipline pursuant to Rules 2(c) and 4a(5). By failure to close diligently estates he was handling in probate court, the referee finds Judge Johnson violated DR 6–101A(3) of the Code of Professional Responsibility. That canon directs that "a lawyer shall not neglect a legal matter entrusted to him."

It is the finding of the referee that Judge Johnson's conduct was prejudicial to the administration of justice and did bring his judicial office into disrepute.

It is the recommendation of the referee that Judge Johnson be publicly censured by the Minnesota Supreme Court.

Judge Johnson is now 64 years of age. He is eligible to retire in June 1985. From the year 1951 until 1964, he was employed as a claims adjustor and claims manager by various casualty companies. He was admitted to practice in 1959 and was appointed a special municipal judge for North St. Paul in February 1961, a part-time position which permitted him to continue his employment with an insurance company. He began his private practice in 1964. In 1967, he was elected municipal judge for North St. Paul, but was authorized to practice law as well until he was made a full-time Ramsey County municipal judge on January 1, 1975.

The case of *Midway National Bank of St. Paul, plaintiff, v. The Continental Insurance Company, defendant and third-party plaintiff, v. Jan B. Sears, Robert Christensen, Goldfein, Silverman and Co. and Whitaker Buick, third-party defendants,* was filed April 20, 1978, and assigned to Judge Johnson for trial. It was set for hearing on October 16, 1978, but not reached until March 16, 1979.

Although the record is unclear as to the precise issues and claims of the parties, apparently the bank sustained a loss arising out of a stop payment order and proceeded against its insurance company to establish coverage. The Insurer, in turn,

sought subrogation against payees of the checks involved.

Judge Johnson promptly decided the case on its merits on March 22, 1979, granting judgment in favor of the bank against Continental for $1,331.13 and dismissing Continental's subrogation claims against the third-party defendants.

On April 5, 1979, Continental made a motion to vacate the court's decision, which was then heard by Judge Johnson on April 23, 1979. It was the failure of the judge to render a decision on that motion until October 6, 1983, which gave rise to these proceedings.

The order of October 6, 1983, denied Continental's motion to vacate the order of March 16, 1979, and directed judgment to be entered for the bank and against Continental's subrogation claims. Following the April 23, 1979 hearing, Judge Johnson roughed out in long hand the order which he ultimately signed. However, for some inexplicable reason, the rough draft was filed away in a personal folder and apparently forgotten until counsel began a series of inquiries about obtaining a decision on the motion.

Counsel for the bank wrote to Judge Johnson on March 11, 1980, forwarding a proposed order for his consideration; counsel for third-party defendant Goldfein wrote to Judge Johnson on July 30, 1980, calling attention to the fact that no ruling had been made after 2 years; another letter from the bank's lawyer dated September 15, 1980, submitted a second proposed order to Judge Johnson; counsel for Continental on September 23, 1980, asked the judge for an opportunity to reargue the motion; on March 4, 1982, plaintiff's counsel again urged the judge to decide the case and, in a phone conversation with the judge on October 29, 1982, was assured the judge would determine whether he had signed an order and would get back to counsel; a final letter from the bank's lawyer dated January 31, 1983, again asked the judge to advise him of the status of the case.

Judge Johnson testified that he first became aware of the fact that the rough draft he had prepared had not been filed or served when he was so advised by the Board on Judicial Standards on September 29, 1983, at which time his salary was withheld for non-compliance with the 90-day rule prescribed by statute.

In the light of at least seven different communications directed to the judge from March 1980 to January 1983, the referee finds unacceptable the contention that Judge Johnson was unaware of the status of the pending decision. His failure to act promptly in response to counsel's legitimate concerns was inexcusable and reprehensible and warrants a severe censure.

It is undisputed that, at the time these disciplinary proceedings were commenced, 36 probate matters undertaken by Judge Johnson between 1964 and 1975 remained open. Typical of what steps had not been taken were orders allowing accounts, final decrees, receipts for disbursements, consents to discharge, orders discharging, consents to discharge by the Commissioner of Taxation, receipts of distributees, inheritance tax returns and non-probate assets schedules.

In one of the 36 estates, the Tax Department wrote to Judge Johnson on June 14, 1972, complaining of his inaction and his failure to react to eight letters calling his attention to the fact that the matter was then 8 years old. In another letter dated August 18, 1977, the Tax Department urged the judge to proceed expeditiously in an estate which was among the files still open when these proceedings were brought.

Judge Johnson's only explanation for failing to close these estates was the fact that he had no previous probate practice or experience and assumed he had filed all the papers necessary and that, having made distributions, the files were closed.

The referee finds this explanation unconvincing. Between 1964 and 1975, Judge Johnson handled literally dozens of probate matters. It flies in the face of reason to assume he was totally unaware of the procedures prescribed by statute in closing

estates of the kind he undertook to process. A more plausible explanation is an unfortunate proclivity for procrastination, of which there was abundant evidence.

All but one of the 36 estates have now been closed. Judge Johnson, at his own expense, has retained counsel to finish whatever remained to be done. To the extent they may be mitigating circumstances, it should be noted that apparently prompt distribution of assets was made by Judge Johnson to all heirs and other beneficiaries; all creditors, including taxing authorities were paid; necessary transfers of real estate were completed; and no complaint from any interested party has been made. The estates were small, ranging on the average between $12,000 and $13,000 as to the 15 whose assets were disclosed by the evidence.

In addition, it is of some significance that Judge Johnson has incurred or paid other attorneys $6,250 to complete the proceedings of the 36 estates in question and has forfeited $2,980 over the period of 3 weeks when his salary was withheld. He has already suffered substantial penalties for his derelictions of duty.

Mention should be made of an offer by Judge Johnson's counsel to prove that, during the time the judge was dilatory in performing his duties, at least 100 other lawyers in Ramsey County were guilty of similar offenses involving some 1,200 estates. Objection was sustained by the referee on the ground that the referee was unaware of any doctrine which makes collective neglect of professional responsibility more desirable than individual neglect of those duties.

Counsel for the Board on Judicial Standards has sought to introduce evidence of two additional charges of misconduct. First, that by remaining the attorney of record in the estates he was then handling, after January 1, 1975, when he became a full-time judge, Judge Johnson was guilty of unauthorized practice which violated Judicial Canon 5F and Minn.Stat. § 488A.19, subd. 2, prohibiting a judge from practicing law; second, that Judge Johnson falsely

certified he had not exceeded the 90-day rule imposed by Minn.Stat. § 546.27 in disposing of his decisions when, in fact, the *Midway Bank* decision had been pending and delinquent since late July 1979.

Although the original allegations signed by the executive secretary of the Board include a charge of unauthorized practice, no mention whatever is made of that charge in the Board's formal complaint.

As to the charge of falsifying pay vouchers; again, the only reference in the complaint to a violation of Minn.Stat. § 546.27 does not specify any offense other than failure to decide the *Midway Bank* case within 90 days.

The complaint explicitly confines the Board's charges to the *Midway Bank* case and the 36 estates. Before the hearing began, the referee stated to counsel, "I assume that the proceedings will be confined to those two issues," naming them, to which counsel for Judge Johnson replied, "We understand these to be the two issues, Your Honor." Counsel for the Board stated, "The Board does also, Your Honor." Under the circumstances, it would be a clear violation of Rule 9d of the Board's rules were the new charges to be presented for the first time at the hearing. That rule provides: "By leave of the board or by consent of the judge, the statement of charges may be amended after commencement of the hearing only if the amendment is technical in nature and the judge and his counsel are given adequate time to prepare a response."

Finally, the introduction of a stipulation reached by the parties in prior disciplinary proceedings against Judge Johnson by file No. 82–62 presents the question of whether or not his prior behavior justifies recommending a sanction more severe or less severe than otherwise would be appropriate.

The referee, being in doubt, has resolved the issue by treating the charges here presented as an isolated matter and has proposed a sanction which is uninfluenced either by the gravity of the prior miscon-

duct or by the sanctions to which the parties stipulated in the prior proceedings.

The referee regards the treatment of prior offenses as an important policy matter which should be reserved for decision by the Board on Judicial Standards and the Minnesota Supreme Court.

RECEIVED
JULY 13 1984